1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

8

9    Curtis Evan Bivins,                )    No. CV-12-1097-PHX-ROS (LOA)
                                         )
10                      Plaintiff,       )    **ORDER**
                                         )
11   vs.                                 )
                                         )
12                                       )
     Charles Ryan, et al.,               )
13                                       )
                        Defendant.       )
14                                       )
     _____ )

15

16          This matter is before the Court on Plaintiff's Motion for Leave to File an Amended

17   and Supplemental Complaint. (Doc. 18) At the same time, Plaintiff lodged his First

18   Amended Complaint with the Court. (Doc. 19)  No Defendant has yet been served with the

19   Original Complaint.

20          At the outset, the Court will deny Plaintiff's Motion for Leave to File an Amended

21   and Supplemental Complaint, doc. 18, as moot.  Pursuant to Rule 15(a)(1)(B), Federal Rules

22   of Civil Procedure, Plaintiff may amend his pleading once, as a matter of course "if the

23   pleading is one to which a responsive pleading is required, 21 days after service of a

24   responsive pleading. . . ."  No Defendant has been served and no responsive pleading has

25   been filed in this case.  As such, Plaintiff was not required to seek leave to file the amended

26   complaint and instead is permitted to file it once as a matter of course.  Plaintiff lodged his

27   First Amended Complaint, doc.19, with his Motion for Leave to Amend.  Next, the Court

28   will screen the First Amended Complaint as required by statute.

**I. Background**

On June 20, 2012, the Court screened Plaintiff's original 42 U.S.C. § 1983 Complaint pursuant to 28 U.S.C. § 1915A(a). (Doc. 12) The Court also granted Plaintiff *in forma pauperis status.* (*Id.*) In the original complaint, Plaintiff brought four counts against the Arizona Department of Corrections ("ADOC") Director Charles Ryan; Medical Director Dr. Adatumu; Department Dietician Laura Donnelly; Medical Supervisor Dr. Baird; Correctional Officer IV McAdorey; Deputy Wardens Keith Hartsuck, Lance Hetmer, and Keith Curran; Assistant Deputy Warden J. Savinen; Central Office Classification Administrator John Doe I; Classification Manager John Doe II; and Protective Segregation Administrator John Doe III. Plaintiff sought declaratory and injunctive relief, monetary damages and his legal fees and costs.

On initial screening, the Court dismissed Counts One, Two and Four as vague and conclusory allegations that would not support a cause of action. The Court allowed Count Three, alleging a violation of the Eighth Amendment medical claim, to proceed against Defendants Baird and Adatutu. The Court dismissed the Eighth Amendment claim against Defendants Donnelly and Savinen. The Court further dismissed Defendant Ryan without prejudice. Finally, the Court denied in part and granted in part Plaintiff's request for injunctive relief.  The Court denied the request compelling Defendants to remove him from "improper confinement in segregation" and move him to a suitable medium custody facility to "cease their illness disability based discriminatory acts." (Doc. 12 at 9) The Court, however, did order Defendants Baird and Adatutu to file a response to the portion of the Temporary Restraining Order and Preliminary Injunction that requires Defendants to "provide an adequately nutritious renal diet." (*Id.* at 11)  On July 30, Plaintiff lodged his First Amended Complaint. (Doc. 19)

**II. Statutory Screening of Prisoner Complaints**

Under the statutory screening process, a district court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a

1  defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  A pleading must

2  contain a "short and plain statement of the claim *showing* that the pleader is entitled to

3  relief." Fed.R.Civ.P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed

4  factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed

5  me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "Threadbare recitals of the

6  elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

7       "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

8  claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. V. Twombly*, 550

9  U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that

10  allows the court to draw the reasonable inference that the defendant is liable for the

11  misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief

12  [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

13  experience and common sense." *Id.* at 1950. Thus, although a plaintiff's specific factual

14  allegations may be consistent with a constitutional claim, a court must assess whether there

15  are other "more likely explanations" for a defendant's conduct. *Id.* at 1951.

16       As the United States Court of Appeals for the Ninth Circuit has instructed, district

17  courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338,

18  342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent

19  standards than formal pleadings drafted by lawyers." *Id.* (quoting *Erickson v. Pardus*, 551

20  U.S. 89, 94 (2007) (*per curiam*)).

21  **III. First Amended Complaint**

22       In his three-count First Amended Complaint, Plaintiff sues the following Defendants:

23  Director of Arizona Department of Corrections Charles Ryan, Medical Director Dr. Adatutu,

24  Physician's Supervisor Dr. Baird, Deputy Wardens Keith Hartsuck and D.W. Thompson,

25  Offender Services Administrator Stacey Crabtree, the Arizona Department of Corrections,

26  Deputy Wardens Sandra Wolker, Warden Trujillo, and Warden Credio.

27       In his request for relief, Plaintiff seeks a declaratory judgment, injunctive relief,

28  monetary damages, and any other relief the Court deems in the interest of justice.

**A. Count One**

In Count One, Plaintiff alleges that his Fourteenth Amendment rights to life, liberty, equal protection and due process have been violated by improper confinement in segregation. Plaintiff alleges that on April 25, 2008, he began receiving hemodialysis treatment. In March 2010, Plaintiff, along with other inmates, was moved to the State Prison Complex in Tucson. He alleges he was then assaulted by another inmate and asked that he be placed in Protective Segregation and was placed into Protective Segregation. In November 2010, Plaintiff states that he was moved to Eyman Complex's Special Management Unit I ("SMU").  He was then soon returned to the Tucson Complex.  Plaintiff alleges that he followed the proper grievance procedure, but unknown to him, he was reclassified as needing to be placed in maximum custody. Thereafter, he was placed in Eyman Complex's SMU-I's facility. He contends that this was done without any allegation of misconduct or proven misbehavior. He alleges he again challenged the change in placement through the grievance process to no avail. He argues that in spite of the fact that he is medium-level qualified, the prison overrode that classification and kept him in maximum security due to his dialysis medical needs.

**B. Count Two**

In Count Two, Plaintiff alleges that Defendants violated the Americans with Disabilities Act ("ADA") and its amendments by discriminating against him on the basis of his disability. Count Two essentially arises out of the same allegations set forth in Count One, with the exception of adding that it violates the ADA. Plaintiff appealed his alleged unconstitutional confinement at SMU-I, but his appeal was denied and he alleges that his placement was upheld on the grounds of "status" and "medical needs."

**C. Count Three**

In Count Three, Plaintiff alleges that his Eighth Amendment right to medical care was violated with respect to his serious medical needs. He alleges that when he was transferred to SMU-I, he received a restricted diet and he began losing weight. He further alleges that he was denied the appropriate medical diet ordered by his treating nephrologist to help stop

1   the weight loss. During this period, he states that he attempted to resolve the issue through

2   the informal grievance process to no avail. According to Plaintiff, through July, 2011, he

3   submitted six communications to SMU-I's kitchen, health unit and COIII Van Winkle. He

4   also alleges he notified a correction officer that he intended to start a "protest fast" to get the

5   attention of the prison administrators.  Plaintiff contends that despite his multiple efforts to

6   resolve the issue through inmates letters, etc., he was denied a proper and nutritionally

7   adequate medical diet as ordered by his treating nephrologist.

8   **IV. Discussion**

9         **A. Counts One and Two**

10         Although *pro se* pleadings are liberally construed, *Haines v. Kerner,* 404 U.S. 519,

11   520-521 (1972), conclusory and vague allegations will not support a cause of action. *Ivey*

12   *v. Board of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a

13   liberal interpretation of a civil rights complaint may not supply essential elements of the

14   claim that were not initially pled. *Id.*

15         To state a valid, plausible claim under § 1983, a plaintiff must allege that he suffered

16   a specific injury as a result of specific conduct of a defendant and show an affirmative link

17   between the injury and the conduct of the defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371-

18   72, 377 (1976). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a

19   plaintiff must plead that each Government official defendant, through the official's own

20   individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948.

21         Plaintiff's allegations in Count One are too vague and conclusory to state a plausible

22   claim.  He alleges that he was denied the constitutional rights to liberty, equal protection and

23   due process. First, it is not clear what specific constitutional violation Plaintiff is alleging

24   against which defendant. Furthermore, if a defendant's only involvement in the allegedly

25   unconstitutional conduct is because of denials of administrative grievances, the failure to

26   intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not

27   amount to active unconstitutional behavior for purposes of § 1983.  *Sheehee v. Luttrell*, 199

28   F.3d 295, 300 (6th Cir. 1999).

1    Finally with respect to the alleged liberty and due process violations, in analyzing a
2    due process claim, the Court must first decide whether Plaintiff was entitled to any process,
3    and if so, whether he was denied any constitutionally required procedural safeguard. Liberty
4    interests which entitle an inmate to due process are "generally limited to freedom from
5    restraint which, while not exceeding the sentence in such an unexpected manner as to give
6    rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical
7    and significant hardship on the inmate in relation to the ordinary incidents of prison life."
8    *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).

9    Therefore, to determine whether an inmate is entitled to the procedural protections
10   afforded by the Due Process Clause, the Court must look to the particular restrictions
11   imposed and ask whether they "'present the type of atypical, significant deprivation in which
12   a state might conceivably create a liberty interest.'" *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th
13   Cir. 1995) (quoting *Sandin*, 515 U.S. at 486). To determine whether the sanctions are atypical
14   and a significant hardship, courts look to prisoner's conditions of confinement, the duration
15   of the sanction, and whether the sanction will affect the duration of the prisoner's sentence.
16   *See Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996). "Atypicality" requires not merely
17   an empirical comparison, but turns on the importance of the right taken away from the
18   prisoner.  *See, e.g., Carlo v. City of Chino*, 105 F.3d 493, 499 (9th Cir. 1997); *Sandin*, 515
19   U.S. at 472 (30 days disciplinary segregation is not atypical and significant); *Torres v.
20   Fauver*, 292 F.3d 141, 151 (3rd Cir. 2002) (four months in administrative segregation is not
21   atypical and significant); *Jacks v. Crabtree*, 114 F.3d 983 (9th Cir. 1997) (denial of year
22   sentence reduction is not an atypical and significant hardship); *Jones v. Baker*, 155 F.3d 810
23   (6th Cir. 1998) (two and one-half years of administrative segregation is not atypical and
24   significant); *Griffin v. Vaughn*, 112 F.3d 703, 706-708 (3rd Cir. 1997) (fifteen months
25   administrative segregation is not atypical and significant); *Beverati v. Smith*, 120 F.3d 500,
26   504 (4th Cir. 1997) (six months of confinement in especially disgusting conditions that were
27   "more burdensome than those imposed on the general prison population were not "atypical
28   . . . in relation to the ordinary incidents of prison life.").  Plaintiff has failed to allege how in

1  any way his confinement was atypical and a significant deprivation to him.

2       Similarly, Count Two is too vague and conclusory to state a claim. Plaintiff alleges

3  a violation of the Americans with Disabilities Act. Under Title II of the ADA, "no qualified

4  individual with a disability shall, by reason of such disability, be excluded in participation

5  in or be denied the benefits of the services, programs, or activities of a public entity, or be

6  subjected to discrimination by any such entity." 42 U.S.C. § 12132. As used in this provision,

7  a "public entity" is defined in part as "(A) any State or local government; [or] (B) any

8  department, agency, special purpose district, or other instrumentality of a State or States or

9  local government. . . ."  42 U.S.C. § 12131. A public entity, however, may also be sued by

10  naming as a defendant a government official, in his or her official, rather than individual

11  capacity.  *See, e.g., Armstrong v. Davis*,  275 F.3d 849 (9th Cir. 2001) (naming governor and

12  other state officers in official capacity).

13       "One way that a plaintiff can prove he has a disability within the meaning of the ADA

14  is to show that he has 'a physical or mental impairment that substantially limits one or more

15  of [his] major life activities.'" *Roberts v. Dimension Aviation*, 319 F. Supp. 2d 985, 988 (D.

16  Ariz. 2004); *see also Howard v. Lehman*, 53 Fed. Appx. 814, 816 (9th Cir. 2002) (affirming

17  grant of summary judgment on *pro se* prisoner's claim under the ADA for failure to raise

18  genuine issue of material fact as to whether plaintiff qualified under the ADA and as to

19  whether defendants "denied him the benefit of any services, programs, or activities based on

20  his alleged disabilities." (citation omitted); *Clark v. California*, 739 F. Supp. 2d 1168, 1177

21  (N.D. Cal. 2010) (disabled prisoners are entitled to "meaningful access to the service,

22  program or activity in question."). In order to state a claim for damages, Plaintiff must also

23  show discriminatory intent on the part of defendants.  *Ferguson v. City of Phoenix*, 157 F.3d

24  668, 674 (9th Cir. 1998).[1]

25       Plaintiff has failed to state a claim under the ADA. Moreover, he does not allege any

26

27       [1]  The Ninth Circuit noted in *Ferguson* that complainants under the ADA would
seldom be able to show discriminatory intent because discrimination against the disabled,
28  being so abhorrent, would itself be "most rare."  *Ferguson*, 157 F.3d at 674.

specifics as to what each individual defendant did or failed to do with respect to his ADA claim. Plaintiff was advised of this inadequacy in the Initial Screening Order. Accordingly, Plaintiff's ADA claim will be dismissed with leave to amend to allow him to allege the necessary elements of an ADA claim.

As such, the Court will dismiss Counts One and Two without prejudice.

**B. Count Three**

In Count Three, Plaintiff alleges an Eighth Amendment violation with respect to his serious medical needs. Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth or Fourteenth Amendment. To state a § 1983 medical claim, a plaintiff must show that the defendants acted with "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Id.* at 1096 (quotations omitted).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn and that a substantial risk of harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm cause by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle*, 429 U.S. at 104-05; *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of*

1  *Corrections*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter*

2  *Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (holding that mere claims of "indifference,"

3  "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference

4  of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical

5  needs." *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir.

6  1985). The indifference must be substantial.  The action must rise to a level of "unnecessary

7  and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

8      Very liberally construing his First Amended Complaint, Plaintiff has stated an Eighth

9  Amendment medical claim against Defendant Baird - the only Defendant against whom

10  Plaintiff made a specific allegation of denying Plaintiff his doctor-ordered diet. The Court

11  will require Defendant Baird to answer Count Three of the Complaint.

12      With respect to Plaintiff's allegations in Count Three against the other named

13  Defendants, they are too vague and conclusory to state a claim. As set forth above, if a

14  defendant's only involvement in the alleged unconstitutional conduct is the denial of

15  administrative grievances, it does not amount to active unconstitutional behavior for

16  purposes of a Section 1983 claim. *See Shehee*, 199 F.3d at 300.  Additionally, Plaintiff does

17  not allege any specifics as to what each individual Defendant did or failed to do with respect

18  to his Eighth Amendment medical needs claim. Thus, the Court will dismiss Count Three as

19  to all Defendants except Defendant Baird.

20  *///*

21  *///*

22  **V. Warnings**

23      **A. Release**

24      Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release.

25  Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay

26  the balance or (2) show good cause, in writing, why he cannot.  Failure to comply may result

27  in dismissal of his case.

28      **B. Address Changes**

1    Plaintiff must file and serve a notice of change of address in accordance with Rule

2    83.3(d) of the Local Rules of Civil Procedure, Plaintiff must not include a motion for other

3    relief with a notice of change of address.  Failure to comply may result in dismissal fo this

4    action.

5        **C. Copies**

6        Because Plaintiff is currently confined in ASPC-Eyman and this case is subject to

7    General Order 12-25, Plaintiff is not required to serve Defendants with a copy of every

8    document he files or submit an additional copy of every filing for use by the Court, as would

9    ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil

10   Procedure 5.4.  If Plaintiff is transferred to a prison other than ASPC-Eyman, he will be

11   notified of the requirements for service and copies for the Court that are required for inmates

12   whose cases are not subject to General Order 12-25.

13       **D. Possible Dismissal**

14       If Plaintiff fails to timely comply with every provision of this Order, including these

15   warnings, the Court may dismiss this action without further notice.  *See Ferdik v. Bonzelet,*

16   963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to

17   comply with any order of the Court).

18       **IT IS ORDERED** as follows**:**

19       (1)  Plaintiff's Motion for Leave to File an Amended  and Supplemental Complaint,

20   doc. 18, is **DENIED** as moot.

21       (2)  Plaintiff's First Amended Complaint, lodged on July 30, 2012, doc. 19, is ordered

22   **FILED.**

23       (3)  Counts One and Two are **DISMISSED** entirely against all Defendants without

24   prejudice.

25       (4)  Defendant Baird must answer Count Three of the Complaint. All remaining

26   Defendants are dismissed from Count Three without prejudice.

27       (5)  The Clerk of Court must send Plaintiff a service packet including this Order, and

28   a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit

- 10 -

1   & Request for Waiver of Service of Summons form for Defendant Baird.

2          (6) Plaintiff must complete[2] and return the service packet to the Clerk of Court within
3   21 days of the date of filing this Order.  The United States Marshal will not provide service
4   of process if Plaintiff fails to comply with this Order.

5          (7) If Plaintiff does not either obtain a waiver of service of the summons or complete
6   service of the Summons and Complaint on a Defendant within 120 days of the filing of the
7   Complaint or within 60 days of the filing of this Order, whichever is later, the action may
8   be dismissed.  Fed.R.Civ.P. 4(m); LRCiv 16.2(b)(2)(B)(i).

9          (8) The United States Marshal must notify Defendant of the commencement of
10   this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal
11   Rules of Civil Procedure.  The notice to Defendant must include a copy of this Order.  The
12   Marshal must immediately file signed waivers of service of the summons.  If a waiver of
13   service of summons is returned as undeliverable or is not returned by Defendant within 30
14   days from the date the request for waiver was sent by the Marshal, the Marshal must:

15          (a) personally serve copies of the Summons, First Amended Complaint, and this
16   Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

17          (b) within 10 days after personal service is effected, file the return of service for the
18   Defendant, along with evidence of the attempt to secure a waiver of service of the summons
19   and of the costs subsequently incurred in effecting service upon the Defendant.  The costs
20   of service must be enumerated on the return of service form (USM-285) and must include
21   the costs incurred by the Marshal for photocopying additional copies of the Summons, First
22   Amended Complaint, or this Order and for preparing new process receipt and return forms
23   (USM-285), if required, Costs of service will be taxed against the personally served
24   Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise

25   _____

26          [2]  If Defendant is an officer or employee of the Arizona Department of Corrections,
27   Plaintiff must list the address of the specific institution where the officer or employee works.
     Service cannot be effected on an officer or employee at the Central Office of the Arizona
28   Department of Corrections unless the officer or employee works there.

1    ordered by the Court.

2         (9) If Defendant agrees to waive service of the Summons and First Amended

3    Complaint, he must return the signed waiver forms to the United States Marshal, not the

4    Plaintiff.

5         (10)  Defendant must answer the First Amended Complaint or otherwise respond

6    appropriate motion within the time provided by the applicable provisions of Rule 12(a) of

7    the Federal Rules of Civil Procedure.

8         (11)  Any answer or response must state the specific Defendant by name on whose

9    behalf it is filed.  The Court may strike any answer, response, or other motion or paper that

10   does not identify the specific Defendant by name on whose behalf it is filed.

11        (12)  This matter is referred to Magistrate Judge Anderson pursuant to Rule 72.1

12   and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized

13   under 28 U.S.C. § 636(b)(1).

14        DATED this 22nd day of August, 2012.

15

16   _____

17                    Roslyn O. Silver

                 Chief United States District Judge

18

19

20

21

22

23

24

25

26

27

28